2003 UT App 354

**STATE of Utah, Plaintiff and Appellee,**

v.

**Lawrence Stewart KNIGHT, Defendant and Appellant.**

**No. 20020465–CA.**

Court of Appeals of Utah.

Oct. 17, 2003.

---

Gary L. Bell, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Kenneth A. Bronston, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BILLINGS, Associate P.J., BENCH and THORNE, Jr., JJ.

## OPINION

THORNE, Jr., Judge:

¶ 1 Defendant Lawrence Stewart Knight appeals his conviction for sexual abuse of a child, a second degree felony, in violation of Utah Code Annotated section 76–5–404.1(1) (1999). We reverse and remand.

### BACKGROUND

¶ 2 In March of 1998, Knight was living with his wife, their one-month-old son, and his wife's three daughters. S.S., the oldest, was twelve years old at the time and had recently undergone a tonsillectomy. Knight and his wife decided to have S.S. sleep in their bed during her recovery. While S.S. was sleeping in the parents' bed, Wife was awakened by her infant son and took him into the living room, leaving Knight and S.S. alone in the bed.

¶ 3 At that time, S.S. was sleeping on her left side facing away from Knight. She awoke when she felt Knight slowly sliding his right hand into her underwear. She felt his hand reach her vagina, "fondle" her genitalia for eight to ten seconds and then felt his fingertip penetrate her vagina. Finally, she felt Knight suddenly remove his hand and get out of bed. S.S. pretended she was asleep during the incident and did not tell her mother about the incident.

¶ 4 Two-and-a-half years later, in November 2000, S.S. told one of her mother's close friends about the incident, who then told Wife. Wife confronted Knight, who initially responded, "Could someone else have done this to her?" Soon thereafter, however, Knight admitted the incident. He then explained to Wife that he had been dreaming he was on a cruise ship with Wife, he mistook S.S. for Wife, and that he immediately got out of bed when he realized he was touching S.S. Knight told her that he intended to tell her about the incident the next morning, but that he "blocked it out."

¶ 5 Approximately six months after the disclosure, Wife spoke to a school counselor concerning D.S., another of her daughters. The counselor then spoke with D.S., who revealed that Knight had touched S.S.'s genitalia. As a result, a caseworker from the Division of Child and Family Services was contacted and the caseworker interviewed S.S. and her family. Later, both the caseworker and a detective from the Bountiful Police Department interviewed S.S. and Knight. Criminal proceedings ensued.

¶ 6 At trial, Knight testified that he had been sleeping and dreaming of his wife when he unexpectedly awoke and realized that he was touching S.S. He claimed that he was "shock[ed]," the he "immediately recoiled,"

and "lea[pt] from the bed," that he was "flood[ed] with emotions" and "feelings of shock and horror ... [and] disbelief." Knight further testified that he did not have an erection during the incident and it was "absolutely not" his conscious desire to touch S.S. He also testified that he had not touched S.S. with the intent to arouse or gratify himself or S.S.

¶ 7 At the conclusion of trial, Knight requested the court instruct the jury on the lesser included offense of sexual battery.[1] The prosecutor objected. Knight argued that the jury could conclude from the evidence that he had intentionally, but mistakenly, touched S.S. thinking that she was his wife, in a situation where he should have known that he might touch S.S. and thereby cause her affront or alarm. The parties debated the issue and the judge took it under advisement, but made no ruling on the record. However, the final jury instructions included no lesser included offense instruction on sexual battery. The matter was submitted to the jury and Knight was found guilty of one count of sexual abuse of a child and placed on probation for three years. Knight appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Knight argues that the trial court erred in refusing to instruct the jury on the lesser included offense of sexual battery. "The refusal to give a requested jury instruction on a claimed lesser included offense is a legal determination, which we review for correctness." *State v. Simpson,* 904 P.2d 709, 711 (Utah Ct.App.1995).

## ANALYSIS

■ ¶ 9 Knight argues that it was reversible error for the trial court not to instruct on the lesser included offense of sexual battery. In *State v. Baker,* 671 P.2d 152 (Utah 1983), the Utah Supreme Court established a two-part test for determining whether a trial court erred in failing to instruct the jury on a requested lesser included offense. *See id.* at 158–59. First, we compare the statutory elements of the crimes to determine whether they overlap. *See id.* Second, we determine whether a rational basis exists from which the jury could acquit the defendant of the offense charged and convict him of the lesser included offense. *See id.* "[W]hen the evidence is susceptible to alternative interpretations, the trial court is obligated to give a lesser included offense instruction if any of those alternative interpretations would provide both a 'rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.' " *Id.* at 160 (citation omitted).

■ ¶ 10 Here, because the State concedes that the elements of sexual abuse of a child and sexual battery overlap, we assume that the first prong of the *Baker* analysis is satisfied. *See id.* Thus, we consider only whether the evidence offered at trial provides a " 'rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.' " *Id.* (quoting Utah Code Ann. § 76–1–402(4) (1973)). To make this legal determination, we need "only decide whether there is a sufficient quantum of evidence presented to justify sending the question to the jury." *Id.* "[W]hen the evidence is ambiguous and therefore susceptible to alternative interpretations, and one alternative would permit acquittal of the greater offense and conviction of the lesser, a jury question exists and the court must give a lesser included offense instruction at the request of the defendant."[2] *Id.*

---

1. Utah Code Annotated section 76–5–404.1(1) sets forth the elements of sexual abuse of a child: "A person commits sexual abuse of a child if ... the actor touches the ... genitalia of any child ... with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person." Utah Code Ann. § 76–5–404.1(1) (1999).

  In contrast, Utah Code Annotated section 76–9–702(3) sets forth the elements of sexual battery: "A person is guilty of sexual battery if the person

... intentionally touches ... the genitals of another person ... and the actor's conduct is under circumstances the actor knows or should know will likely cause affront or alarm to the person touched." Utah Code Ann. § 76–9–702(3) (1999 & Supp.2002).

2. Although there is evidence from which the jury may well have found Knight guilty of sexual abuse of a child, "it is not this Court's role to weigh the evidence [but] is [instead] the responsi-

¶ 11 Here, Knight does not dispute the fact that he touched S.S.'s genitalia. Knight, also concedes that "under [the] circumstances" in which he found himself—in bed alone with his stepdaughter—he should have known that he could have been touching his stepdaughter and that his actions would "likely cause [her] affront or alarm." Utah Code Ann. § 76-9-702(3) (1999 & Supp.2002). Thus, because he was asleep when the incident occurred, and therefore, lacked the requisite intent to be guilty of sexual abuse of a child, Knight argues that there is a rational basis in the evidence for convicting him of sexual battery and acquitting him of sexual abuse of a child.

¶ 12 The State, however, argues that there is no rational basis for concluding that Knight acted with the requisite intent to commit sexual battery because he repeatedly denied touching the victim. The State, therefore, argues that the court correctly did not give the lesser included offense instruction. The record is clear, however, that Knight eventually admitted to the touching but then claimed that he lacked the requisite intent to support the felony charge.

¶ 13 The State also argues that courts should not liberally grant requests for a lesser included offense instruction. According to the State, *State v. Kell*, 2002 UT 106, 61 P.3d 1019, reverses the long-standing view "that any evidence, even the uncorroborated testimony of the defendant, entitles a defendant to any instruction on his theory of the case." *Id.* at ¶ 24 n. 5, 61 P.3d 1019. The State argues that a lesser included instruction is not warranted when the "great weight of the evidence augurs against the instruction."

¶ 14 After reviewing the facts, we conclude that the case at bar is significantly different from *Kell.* In *Kell*, the defendant requested an instruction on imperfect self-defense manslaughter, which was denied. *See id.* at ¶ 22, 61 P.3d 1019. On appeal, the Utah Supreme Court found that the evidence was insufficient to create a rational basis to acquit the defendant of the greater offense and convict him on the lesser. *See id.* at ¶ 24, 61 P.3d 1019. Moreover, the clear weight of the evidence favored the verdict (e.g., the victim was attacked from the rear and stabbed several times while unarmed and handcuffed) and did not support, in any reasonable manner, the defendant's theory of self-defense. *See id.* at ¶ 25 n. 5, 61 P.3d 1019.

¶ 15 In the present case, the weight of the evidence does not run contrary to Knight's claim that he was asleep and mistook S.S. for his wife. Instead, evidence supports both the State's and Knight's theory of the case. Accordingly, the State's reliance upon *Kell* is unpersuasive.

¶ 16 Thus, looking at the evidence in the light most favorable to the defendant, *see State v. Crick*, 675 P.2d 527, 532 (Utah 1983), we conclude there was evidence presented which is consistent with Knight's argument that he did not touch S.S. "with intent to cause substantial emotional or bodily pain to [S.S.] or with the intent to arouse or gratify the sexual desire of [himself or S.S.]." Utah Code Ann. § 76-5-404.1(1) (1999). From this evidence, the jury could have found that while Knight "intentionally touche[d] . . . the genitals of [S.S.]," he did so believing S.S. to be his wife, whom he thought would consent. Utah Code Ann. § 76-5-404.1(1) (Supp.2002). Accordingly, we conclude that there "is a sufficient quantum of evidence presented to justify sending the question to the jury." *State v. Baker*, 671 P.2d 152, 159 (Utah 1983). The trial court erred in not giving the lesser included offense instruction.[3]

---

bility of the trier of fact." *State v. Oldroyd,* 685 P.2d 551, 555 (Utah 1984).

**3.** In *Payne,* 964 P.2d 327 (Utah Ct.App.1998), we addressed the context in which reversal was warranted for failing to give a lesser included offense instruction. There, we stated that

"if the evidence is ambiguous and susceptible to alternative explanations the trial court must give the lesser included offense instruction if any one of the alternative interpretations provides a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."

*Id.* at 333–34 (citations omitted). Logically, in a circumstance where the jury could rationally find either one of the two options, especially when intent is in dispute, then it is impossible to say that failing to give the instruction did not affect the outcome of the trial. Consequently, in circumstances such as in this case, where the evidence supports both Knight's theory and the State's theory, "the likelihood of a different out-

■■ ¶ 17 We conclude that when an element of the crime, such as intent, is in dispute, and the evidence is consistent with both the defendant's and the State's theory of the case, failing to instruct on the lesser included offense presumptively affects the outcome of the trial. Under such circumstances, our confidence in the verdict is undermined, because the available evidence could support a jury's decision to convict on either the greater or lesser crime. *See State v. Oldroyd,* 685 P.2d 551, 556 (Utah 1984) (" '[W]here proof of an element of the crime is in dispute, the availability of the "third option"—the choice of conviction of a lesser offense rather than conviction of the greater or acquittal—gives the defendant the benefit of the reasonable doubt standard.' " (alterations in original) (quoting *Baker,* 671 P.2d at 157)); *State v. Payne,* 964 P.2d 327, 334 (Utah Ct.App.1998) ("For an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." (citations and quotations omitted)).

## CONCLUSION

¶ 18 Knight has presented a sufficient quantum of evidence to justify submitting the question of whether he committed sexual battery instead of sexual abuse of a child to the jury. Consequently, the trial court erred in not giving the lesser included offense instruction. Furthermore, the evidence supports both Knight's theory and the State's theory of the case. It is reasonable to conclude that the jury could have convicted Knight of either sexual abuse of a child or sexual battery. Therefore, our confidence in the jury verdict is undermined. The verdict is reversed and the case is remanded to the district court for a new trial.

¶ 19 I CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge.

BENCH, Judge (dissenting):

¶ 20 I believe that "the evidence in this case is insufficient to provide a rational basis for the jury to acquit [Knight] of [sexual abuse of a child] and convict him of [sexual battery]." *State v. Kell,* 2002 UT 106, ¶ 24, 61 P.3d 1019. In *Kell,* a majority of the Utah Supreme Court held that a defendant's uncorroborated, self-serving testimony does not entitle him to an instruction on his theory of the case. *See id.* at n. 5, 61 P.3d 1019. All we have to support an instruction on sexual battery in the present case is Knight's own testimony.

¶ 21 Furthermore, "even [if] there was a rational basis in the evidence for giving the requested . . . instruction, the evidence of the greater offense was so strong that there is no substantial likelihood of a different outcome had the requested instruction been given." *State v. Payne,* 964 P.2d 327, 334 (Utah

come is . . . sufficiently high to undermine our confidence in the verdict." *Id.* at 335.

Furthermore, *Payne,* and the cases cited as authorities therein, are factually different from this case. For example, in *Payne,* the defendant failed to present *any evidence* to rebut an eye witness's account of the crime, nor did he introduce evidence to contradict the victim's testimony regarding the crime. *See id.* at 334. Similarly, in *State v. Piansiaksone,* 954 P.2d 861 (Utah 1998), a case relied upon by *Payne, see Payne,* 964 P.2d at 334, the court instructed the jury on the crime of murder and the lesser included crime of emotional disturbance manslaughter. *See Piansiaksone,* 954 P.2d at 869. However, the instruction restricted the order in which the jury could consider the crimes. *See id.* at 869–70. On appeal, the Utah Supreme Court held that the trial court erred in dictating the order in which the jury could consider the crimes, but found the error harmless. *See id.* at 870. The court stated that "there was no basis in the evidence" to support the lesser included offense instruction and so restricting the jury's consideration of that

crime did not affect the outcome of the trial. *Id.* at 871.

Unlike *Payne* and *Piansiaksone,* where *no evidence* supported giving the lesser included offense instruction, Knight presented a "sufficient quantum of evidence" to justify sending the issue to the jury. *State v. Baker,* 671 P.2d 152, 159 (Utah 1983). Under the facts of this case, where intent is in dispute and there is a quantum of evidence to justify sending the issue to the jury, we cannot say that "there is no substantial likelihood of a different outcome had the requested instruction been given." *Payne,* 964 P.2d at 334.

The other cases cited in *Payne* are also distinguishable. *State v. Jacques,* 924 P.2d 898, 902 (Utah Ct.App.1996), and *State v. Iorg,* 801 P.2d 938, 941–42 (Utah Ct.App.1990), each address harmless error in the context of erroneously admitted evidence. *State v. Knight,* 734 P.2d 913, 920 (Utah 1987), and *State v. Willett,* 909 P.2d 218, 224 (Utah 1995), address a violation of a discovery rule and invocation of the right to remain silent.

Ct.App.1998). After repeatedly denying touching his twelve-year-old stepdaughter, Knight finally admitted that he touched her as alleged. He claims he thought he was initiating sexual contact with his wife while on a cruise ship. Yet, he also asserted that the contact did not sexually arouse him. An instruction on sexual battery would have made no difference because Knight's version of the events is fraught with contradiction and is beyond reasonable belief. Therefore, no rational basis exists for the jury to convict him of sexual battery rather than sexual abuse of a child.

¶ 22 I would rule that any error in not giving the instruction was, at most, harmless error. *See id.*