This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36815**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RUBEN M. VALDEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Ruben M. Valdez appeals his conviction for battery upon a peace officer. He argues that his conduct underlying the conviction did not constitute a "meaningful challenge" to that officer's authority, a finding necessary to sustain Defendant's conviction. He also argues that the omission in the jury instructions of a definition of the term "meaningful challenge to authority" was fundamental error. Unpersuaded, we affirm.

**BACKGROUND**

**{2}** The parties do not dispute the following facts. Defendant was an inmate in an adult detention center where Jereme Mullen worked as a detention officer. Officer Mullen was new to the law enforcement profession and the job. Following his hire, he spent three weeks at a training academy and then shadowed an officer at the detention center for one week. He had been working on his own at the detention center for less than two weeks on the night of the incident.

**{3}** On that night, Defendant was on suicide watch, locked in a cell in the segregated medical section of the jail. He called to Officer Mullen, who responded by approaching the window of Defendant's cell door to check on him. Defendant then walked toward the door with an eight-ounce cup in hand. Defendant bent down to throw the cup's contents through an approximately one-inch gap between the door and floor at Officer Mullen; after he did that, Defendant said, "You need to get me out of this fucking cell" and "it's [your] fault." The cup was full of urine, which splashed onto Officer Mullen's pants and boots.

**{4}** Officer Mullen testified about the incident at Defendant's jury trial. He said that at the time he had simply been performing his job duties and that he had done nothing to provoke Defendant. He said also that he perceived Defendant's action as "disgusting" and "frustrat[ing] . . . because there was no reason for it" but not as a direct challenge to his authority. Lastly, Officer Mullen testified that the incident caused him to act with greater caution toward Defendant.

**{5}** At trial, the jury was instructed that, to find Defendant guilty of battery upon a peace officer, it must find that:

[a]   [D]efendant intentionally touched or applied force to [Officer] Mullen by throwing urine on [Officer] Mullen;

[b]   At the time, [Officer] Mullen was a peace officer and was performing the duties of a peace officer;

[c]   [D]efendant knew [Officer] Mullen was a peace officer;

[d]   [D]efendant's conduct caused a meaningful challenge to the authority of [Officer] Mullen;

[e]   [D]efendant acted in a rude, insolent or angry manner; [and]

[f]   This happened in New Mexico on or about February 7th, 2017.

**DISCUSSION**

**{6}** On appeal, Defendant makes two claims concerning the instruction's fourth paragraph: (1) the evidence was legally and factually insufficient for the jury to have found that Defendant meaningfully challenged Officer Mullen's authority; and (2) the absence of a definition of "meaningful challenge to authority" in the jury instructions amounted to fundamental error. We consider each claim in turn.

## I. There Was Sufficient Evidence to Satisfy the "Meaningful Challenge" Element of the Jury Instruction

**{7}** As a preliminary matter, Defendant acknowledges that his conduct satisfied the elements of simple battery established by NMSA 1978, Section 30-3-4 (1963), a lesser-included offense of battery upon a peace officer. Defendant challenges only the legal and factual sufficiency of the evidence for his conviction of the higher offense, established by NMSA 1978, Section 30-22-24 (1971). Specifically, Defendant disputes that his conduct met the definition of a "meaningful challenge to the authority of [Officer] Mullen," which was necessary to the jury's finding of guilt as to the higher offense. Defendant argues that this element was unmet because his conduct toward Officer Mullen did not "actually interfere with the officer's ability to carry out duties or the officer's control or command of the situation." In other words, Defendant considers the element unmet because a particular consequence did not flow from his conduct.

**{8}** In so arguing, Defendant invites us to more precisely define "meaningful challenge to an officer's authority," a phrase adopted by *State v. Padilla*, 1997-NMSC-022, ¶ 2, 123 N.M. 216, 937 P.2d 492, as one interpretation of the word "unlawful" used in Section 30-22-24(A). Specifically, that section defines "battery upon a peace officer" as "the unlawful, intentional touching or application of force to the person of a peace officer while he is in the lawful discharge of his duties, when done in a rude, insolent or angry manner." Section 30-22-24(A).

**{9}** We decline Defendant's invitation to define "meaningful challenge to an officer's authority" for two reasons. First, our appellate courts have made clear both that (1) juries will sufficiently understand the phrase; and (2) the issue of whether certain conduct constitutes such a challenge is "best left to juries to decide using their collective common sense and wisdom as a guide." *State v. Jones*, 2000-NMCA-047, ¶ 14, 129 N.M. 165, 3 P.3d 142. *Padilla* itself did not elaborate on the phrase's meaning, and it further instructed courts to pose the "meaningful challenge" question to juries. 1997-NMSC-022, ¶¶ 2, 11. *Jones* and its companion case, *State v. Cooper*, 2000-NMCA-041, 129 N.M. 172, 3 P.3d 149, followed suit. *See Jones*, 2000-NMCA-047, ¶ 14 (reiterating that when the "meaningful challenge" element is in dispute, the jury instruction must include the element); *id.* ¶ 20 (deferring to juries to determine whether conduct is a "meaningful challenge to authority"); *Cooper*, 2000-NMCA-041, ¶ 1 (reversing the defendant's conviction because the jury was improperly instructed on the "meaningful challenge" element). A subsequent case, *State v. Martinez*, 2002-NMCA-036, ¶ 38, 131 N.M. 746, 42 P.3d 851, likewise declined to define the "meaningful challenge" phrase and underscored the propriety of letting juries decide whether particular conduct meets

the definition. In short, our case law favors context-specific interpretations of the phrase by juries over across-the-board narrowing by courts in this circumstance.

**{10}** Second, this Court has also made clear that throwing urine at a peace officer— free of any particular consequence, including the one Defendant identifies—can meet the definition of a meaningful challenge to an officer's authority. Specifically, we have held that "a reasonable jury could find that . . . throwing urine upon a peace officer comes within the purview of battery upon a peace officer" and that "throwing urine at [jailers can] constitute a 'meaningful challenge' to their authority, depending upon the context." *Jones*, 2000-NMCA-047, ¶¶ 18, 20; *cf. Padilla*, 1997-NMSC-022, ¶¶ 3, 8 (recognizing that squirting baby oil and throwing water at detention officers from behind the bars of a locked cell could jeopardize the officers' authority). Again, that context is a matter for the jury's consideration. *Jones*, 2000-NMCA-047, ¶ 14. Here, Defendant threw urine on a jailer, and the jury was asked to find whether, given the context of that battery, Defendant's conduct constituted a meaningful challenge to that jailer's authority. The law does not require that Defendant's conduct have any particular consequence, and we see no reason to now refine the law in such a way.

**{11}** For these reasons, the evidence presented at Defendant's trial was legally sufficient to support his conviction.

**{12}** We next address Defendant's contention that the State failed to present sufficient evidence establishing that Defendant committed anything more than a simple battery, the factual aspect of Defendant's sufficiency argument. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). In reviewing for sufficiency, we "view[] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict[,]" *Montoya*, 2015-NMSC-010, ¶ 52 (internal quotation marks and citation omitted), and we "disregard all evidence and inferences" that support a different result, *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "The question before [us] . . . is not whether [we] would have had a reasonable doubt about guilt but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise." *Montoya*, 2015-NMSC-010, ¶ 52 (alteration, internal quotation marks, and citation omitted). Lastly, we note that "the jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alterations, internal quotation marks, and citation omitted).

**{13}** Defendant again premises his argument on the assertion that battery upon a peace officer is present only when certain consequences can be shown. Specifically, Defendant argues that the State presented no evidence that Defendant's conduct either

interfered with Officer Mullen's ability to perform his duties or "undermine[d] his decorum" when performing them. This argument fails in light of three cases: *Padilla*, 1997-NMSC-022, ¶ 2, which did not discuss consequences necessary to establish a "meaningful challenge"; *Jones*, 2000-NMCA-047, ¶ 20, which concluded that the act of throwing urine upon an officer alone could suffice to sustain a conviction in a given context of battery upon a peace officer; and *Holt*, 2016-NMSC-011, ¶ 20, which reminds our reviewing courts that unless legally erroneous, the jury instructions used establish the law of the case by which the sufficiency of the evidence is measured. Considered together, the State was plainly not required to present additional evidence of a consequence flowing from Defendant's actions in order for him to be found guilty of battery upon a peace officer.

**{14}** Under *Padilla* and *Jones*, we consider the context of the incident to ascertain whether the jury's determination was reasonable. First, concerning Defendant's argument that Officer Mullen's statement that his authority was not challenged is fatally at odds with the "meaningful challenge" element, we disregard such testimony, since it supports a verdict of not guilty. *See Rojo*, 1999-NMSC-001, ¶ 19. We reiterate that it is the role of the jury, not the victim, to make the "meaningful challenge" determination. It is our role to review the jury's determination "from a highly deferential standpoint[,]" *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930, and consider whether it was impermissibly unreasonable for the jury to conclude, based on the context in which it occurred, that Defendant's act of throwing urine on Officer Mullen was a meaningful challenge to Officer Mullen's authority. *See Montoya*, 2015-NMSC-010, ¶ 52; *Jones*, 2000-NMCA-047, ¶ 20.

**{15}** The evidence in the record, including the context associated with Defendant's action, supports the reasonableness of the jury's conclusion. The jury heard evidence that Defendant, unprovoked, propelled a cupful of urine on Officer Mullen, who had recently begun work at the detention center and whom Defendant asked to approach his cell. One reasonable conclusion the jury could have reached is that Defendant wanted to test and demonstrate the limits of Officer Mullen's newfound authority over him. It would also be reasonable for the jury to infer that, in an effort to keep Officer Mullen farther away from his cell in the future, Defendant chose to summon Officer Mullen from what other responsibility he was undertaking—under the pretense of needing something from him—in order to demonstrate that upon Officer Mullen's approach Defendant could unwelcomingly and unexpectedly commit an act of battery. Because the substance thrown by Defendant was urine—bodily waste most consider repulsive—it would be reasonable to consider that challenge "meaningful" because it could suggest to Officer Mullen that his authority is not as broad as he might think. In sum, a reasonable juror could conclude that the battery by Defendant against Officer Mullen was a meaningful challenge to Officer Mullen's authority.

**{16}** For these reasons, the evidence presented at Defendant's trial was factually sufficient to support his conviction.

## II.     The Absence of a Definition of "Meaningful Challenge to Authority" in the Jury Instructions Was Not Fundamental Error

**{17}**     We lastly address Defendant's additional contention on appeal: that fundamental error stemming from the jury instructions used at his trial warrants reversal of his conviction. He argues that it was fundamental error (1) "not to define [']meaningful challenge to authority['] as either an interference with the officer's ability to carry out his job or as undermining an officer's control or command of the situation"; or (2) "to fail to apprise the jury that more than a mere affront to the officer's dignity was required." This second claim references the standard established in *Padilla*, 1997-NMSC-022, ¶ 6, for conduct to qualify as battery upon a peace officer.

**{18}**     As discussed above, the law does not support limiting the definition of "meaningful challenge to authority" in the way Defendant proposes in his first claim, and so the absence of this limitation could not have constituted error. *See supra* Part I, ¶¶ 1-3. Our appellate courts have repeatedly stated or implied that the phrase "meaningful challenge to an officer's authority," on its own, is sufficiently clear for juries to understand and apply, and so the absence of the "mere affront" language Defendant cites in his second claim could not have constituted error either. Additional support for these conclusions is found in the fact that the instructions used at Defendant's trial were patterned after UJI 14-2211 NMRA, the current instruction associated with the crime of battery upon a peace officer. Our Supreme Court's adoption of that instruction "establishes a presumption that [it is a] correct statement[] of law." *State v. Parish*, 1994-NMSC-073, ¶ 26, 118 N.M. 39, 878 P.2d 988 (internal quotation marks and citation omitted). It was thus not error for the district court to refrain from, sua sponte, adding either of Defendant's proposed definitions to the instructions. Accordingly, we need not analyze this issue further. *See State v. Adamo*, 2018-NMCA-013, ¶ 34, 409 P.3d 1002, *cert. denied*, No. S-1-SC-36748 (2017) (concluding that since there was no error in the jury instructions, there was no fundamental error).

## CONCLUSION

**{19}**     Having concluded that there was sufficient evidence to support Defendant's conviction and that no error resulted from the use of the jury instructions given at Defendant's trial, we affirm.

**{20}     IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**I CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES (dissenting).**

**IVES, Judge (dissenting).**

{21}   In my view, the evidence is insufficient to allow a jury to conclude beyond a reasonable doubt that Defendant's conduct caused a meaningful challenge to the officer's authority. I would therefore reverse Defendant's conviction for battery on a peace officer, a felony, and remand for entry of judgment convicting Defendant of battery, a misdemeanor. Because my esteemed colleagues reach a different conclusion, I respectfully dissent.

{22}   The purpose of requiring the State to prove that a person's conduct resulted in a meaningful challenge is "to distinguish mere rude, insolent, or angry conduct that could be punished as a misdemeanor[] from truly felonious conduct that poses . . . a challenge that is proportional in consequence to the punishment extracted." *Jones*, 2000-NMCA-047, ¶ 9. "The term 'meaningful' provides a means to prevent treating petty conduct that could be interpreted as an incidental challenge to authority as though it were a strict liability felony." *Id.* ¶ 14. Our courts have restricted "the class of conduct punishable as a felony" in this manner to "reflect[] the accepted legal principle that police are trained to tolerate more than the average citizen is expected to endure." *Id.* ¶ 11. Throwing urine is not always a meaningful challenge; whether it is "depend[s] upon the context."[1] *Id.* ¶ 18.

{23}   The jury in Defendant's case received an instruction based on UJI 14-2211, which required proof beyond a reasonable doubt that Defendant's "conduct caused a meaningful challenge to the authority of [Officer] Mullen[.]" The only direct evidence about what Defendant's battery did or did not cause was the testimony of the victim, Officer Mullen, and he testified that the battery did not challenge his authority as a detention officer. The other pertinent evidence supported his testimony. When Defendant threw the urine onto Officer Mullen's boots and the bottom of his pants, Defendant was securely confined in his cell alone; a locked door separated him from Officer Mullen and every other person in the jail. Officer Mullen testified that the incident did not prevent him from completing his assigned tasks. The essence of Officer Mullen's testimony—that the incident was disgusting and frustrating but did not challenge his authority—dovetails with the principle that officers "are expected to have a higher tolerance for offensive conduct." *Jones*, 2000-NMCA-047, ¶ 11 (internal quotation marks and citation omitted).

{24}   The majority does not articulate a reasonable analysis that the jury could have relied on to conclude that Defendant's conduct did, in fact, cause a meaningful

---

1Although the majority relies on a number of facts in concluding that Defendant "challenged" Officer Mullen's authority, *see* Majority. Op. ¶ 15 (concluding that there was sufficient evidence to prove that Defendant challenged Officer Mullen's authority by throwing urine on him because (1) Defendant committed the battery without provocation; (2) Defendant "chose to summon" Officer Mullen under false pretenses; and (3) Officer Mullen was a new officer), the majority relies on a single fact to conclude that this challenge was meaningful: the fact that the substance thrown was urine. I do not believe that rationale can be squared with *Jones's* insistence that whether committing a battery with urine constitutes a meaningful challenge is context-dependent. *See* 2000-NMCA-047, ¶ 18.

challenge. *See State v. Sizemore*, 1993-NMCA-079, ¶ 16, 115 N.M. 753, 858 P.2d 420 ("Unless the facts make the analysis clear, the reviewing court must be able to articulate an analysis the jury might have used to determine guilt, and that analysis must be reasonable."). The fundamental problem with the majority's analysis is that it deviates from the law of the case set forth in the given jury instruction. *See Holt*, 2016-NMSC-011, ¶ 20 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alterations, internal quotation marks, and citation omitted)). The instruction required proof that Defendant's "conduct *caused* a meaningful challenge"—that such a challenge actually *occurred* because of Defendant's actions. A meaningful challenge is one "that is proportional in *consequence* to the punishment extracted" for a felony. *Jones*, 2000-NMCA-047, ¶ 9 (emphasis added); *see Padilla*, 1997-NMSC-022, ¶ 8 (describing the "meaningful challenge" element as "the element of *harm* to [an officer's] . . . authority" (emphasis added)); *Cooper*, 2000-NMCA-041, ¶ 9 ("[T]he legislature intended the jury to concentrate on the touching *and its impact* in light of the immediate circumstances[.]" (emphasis added)). But the majority relies on theories regarding Defendant's *goals*, not the *consequences* of his conduct. The majority states that the jury could have concluded that Defendant "wanted to test and demonstrate the limits of Officer Mullen's newfound authority" and that Defendant threw the urine "in an effort to keep Officer Mullen farther away from his cell in the future" and "to demonstrate that upon Officer Mullen's approach Defendant could unwelcomingly and unexpectedly commit an act of battery."[2] Majority Op. ¶ 16. The majority's analysis does not reasonably support the conclusion that Defendant's conduct caused a meaningful challenge.

{25}    Because I conclude that the evidence is insufficient to prove the felony of battery on a peace officer, I would reverse that conviction. However, because the evidence is sufficient to sustain a conviction for the lesser-included offense of battery, I would remand for entry of judgment on that misdemeanor. *See State v. Villa*, 2004-NMSC-031, 136 N.M. 367, 98 P.3d 1017 (holding that an appellate court that has reversed a conviction for insufficient evidence may remand for entry of judgment on a lesser-included offense only if the jury was instructed on the lesser-included offense).

**ZACHARY A. IVES, Judge**

---

[2]Even if the issue pertained to Defendant's goals, I believe the majority's analysis is inconsistent with our standard of review. The majority's analysis rests on conclusions the jury could have reached only by speculating, which our standard of review prohibits. *See Rojo*, 1999-NMSC-001, ¶ 31 (prohibiting reliance on conclusions that the jury could only have reached "based on mere conjecture or surmise"); *see also State v. Mariano R.*, 1997-NMCA-018, ¶ 7, 123 N.M. 121, 934 P.2d 315 ("[C]ommon knowledge and experience must not be confused with cynical speculation. In reviewing a determination of guilt, we cannot sanction a view that assumes the worst about human nature. That is an essential message of the presumption of innocence."). I especially disagree with the majority's belief that "[o]ne reasonable conclusion the jury could have reached is that Defendant wanted to test and demonstrate the limits of Officer Mullen's newfound authority over him." Majority Op. ¶ 16. I do not see how the jury could have reached this conclusion based on anything other than speculation because the State presented no evidence that Defendant knew that Officer Mullen was a new officer.